## Illinois Central Railroad Co. v. B. P. Bandy, Adm.

1. VERDICTS—*On Conflicting Evidence.*—A verdict upon conflicting evidence must prevail as to questions of fact in the absence of reversible error in the court.

2. INSTRUCTIONS—*Care Required of Children, etc.*—An instruction in an action for damages for the death of a child as a result of negligence which states " that the law does not require one of tender years to exercise the same degree of care and caution as a person of mature age, and that a child is required to exercise only that degree of care which one of that age would naturally and reasonably use in the same situation and under like circumstances," is proper.

3. ORDINARY CARE—*What is Not Imputable Negligence.*—A jury is warranted in finding as a fact that allowing a child seven years and five months old, whose father is a laborer, to attend school in the vicinity of railroad crossings unattended except by a sister eleven years old, does not present a case of negligence on the part of the parents.

4. EVIDENCE—*Allowing the Father as Administrator of His Deceased Child to Testify that He Is a Cripple.*—In an action by the father of a deceased child, as administrator, to recover damages for the benefit of the next of kin, it is reversible error to permit him to testify, against objection, that he has but one arm, as his physical condition can not affect the amount of his loss.

Action in Case.—Death from negligent act. Appeal from the Circuit Court of Williamson County. The Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

Statement.—This is an action by the administrator of the estate of Maggie Bandy, a girl seven years and five months old at the time of her death, to recover damages from appellant for the benefit of the next of kin, a father, mother, and eight brothers and sisters, based on the claim that her death was caused by the negligence of the servants of appellant in managing and running its train through the city of Carterville, a city of 2,000 inhabitants.

The first count of the declaration alleges that appellant's railroad ran across a public highway, known as Division street, in the city of Carterville, and that it was the duty of appellant to so manage its train of cars as not to expose to unnecessary hazard or liability any person that might be

passing along Division street over said railroad; and that appellant so carelessly handled its train that Maggie Bandy, appellee's intestate, of the age of seven years, was killed, while exercising ordinary care and dilgence for her safety.

The second count alleges that defendant did not have a bell rung at said crossing as required by ordinance and statute, and that by means of that neglect the intestate, Maggie Bandy, was killed.

The third count alleges the existence of an ordinance of Carterville prohibiting the running of trains in the corporate limits of Carterville faster than six miles an hour, and that defendant violated that ordinance, whereby the intestate was killed.

A general demurrer was sustained to the fourth count.

The fifth count is substantially the same as the third count.

. The general issue was pleaded and issue joined.

Verdict for $4,000 damages.

Motions for new trial and for arrest of judgment by appellant were overruled and judgment on verdict.

The killing of Maggie Bandy took place in the town of Carterville, in Williamson county. Division street is the most public street in Carterville. It runs due north and south. The general course of the railroad is east and west, but at the crossing of Division street its course is about twenty degrees north of west, and the railroad thus angles across Division street. From the depot to the crossing it is slightly down grade. The railroad is nearly on a level with the street. The sidewalk is on a level with the railroad where it crosses the railroad. There is no obstruction at or about the crossing to interfere with a full view of trains going west.

The engine by which deceased was struck was going west and was in plain view for several hundred feet to any one going over the crossing at Division street.

There was a school house south of the Division street crossing, and Maggie Bandy went over that crossing in

going to and from school several times a day, as did many of the other school children.

The engine which struck Maggie Bandy was a switch engine used mainly in handling cars for the Carterville coal mines, and was being used in the performance of regular daily work when the accident happened.

School had closed earlier than usual on the evening of the injury, which occurred between 3 and 4 o'clock P. M. She was alone when she attempted to cross the railroad at Division street, her sister, eleven or twelve years of age, being ahead of her.

The wind was blowing, and as she approached the crossing she threw up her hand to catch her hat, and in that attitude walked on the crossing and was struck and instantly killed by the locomotive drawing four freight cars. A little to the rear of deceased and opposite, a large flouring mill was running, making the noise usual to such mills.

WILLIAM H. GREEN, attorney for appellant; JAMES FENTRESS, of counsel.

SMITH & HENSHAW and J. L. GALLIMORE, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The evidence presented by the record does not warrant this court in setting aside the verdict of the jury, neither upon the allegations of negligence on the part of appellant nor of ordinary care upon the part of the deceased. Sixteen witnesses testify that the bell was not rung nor the whistle sounded. Six testify positively that they were. Twelve witnesses for appellee put the speed of the cut of cars at from eight to fifteen miles an hour. About the same number for appellant put it at less than six miles. An ordinance of the city prohibited a speed of over six miles an hour for a freight train, car or engine. Upon such conflicting evidence the finding of the jury must prevail.

Nor do we find reversible error in the instructions given for appellee, nor in the refusal of the instructions specified by appellant.

In Norton v. Volzke, 158 Ill. 407, instructions identical with Nos. 1 and 2, as referred to in appellant's brief, were given.

In that case the child was between ten and eleven years of age. In commenting upon the instructions the court say :

" All the instructions may be considered together. These instructions inform the jury that the age and discretion of the party injured are proper subjects for inquiry; that the law does not require one of tender years to exercise the same degree of care and caution as a person of mature years, and that a child is only required to exercise that degree of care which one of that age would naturally and reasonably use in the same situation and under like circumstances."

And further say :

" While it is true, perhaps, that these instructions might have been more skillfully drawn, they correctly state the law in this State, and the jury could not have been deceived or misled by them."

The question of ordinary care on the part of the deceased was for the jurors to answer. Chi. City Ry. v. Wilcox, 138 Ill. 371.

We see no error in the law as given them, touching this issue.

The action being brought by the father and mother, in connection with the brothers and sisters of the deceased, the doctrine of imputable negligence applies. But the jury were warranted in finding as a fact, that a child seven years and five months old, attending school with a sister eleven years old, whose father was a laborer, does not present a case of negligence on the part of the parents.

Instructions numbered one and two, asked by appellant, were properly refused. Number one states this proposition :

" Under ordinary circumstances, employes, in operating a moving train of cars, are not required to stop or slow up the train in consequence of seeing persons, minors or adults,

standing or approaching closely to the track in advance of the train; and such employes have a right to rely upon persons near or approaching the track, exercising reasonable caution to avoid getting on the track or exposing themselves to danger."

The matter for consideration was not what employes were required to do under ordinary circumstances, but what their duty was to do, when crossing a frequented street in a city of 2,000 inhabitants, with a cut of cars, with speed limited by ordinance to six miles an hour, and children of tender age approaching, and close to, or on the track.

Instruction numbered two is faulty for a similar reason.

The case must, however, be reversed for error in allowing B. P. Bandy, the father of deceased, to testify that he had but one arm. The abstract of this testimony is as follows:

"My name is B. P. Bandy. I am plaintiff, as administrator of estate of Maggie Bandy. Have lived at Carterville since 1873, except about three years. Am forty-nine years old. Work around the mines.

Have you both arms?

No, sir.

Objected to by defendant's counsel.

Mr. Henshaw: Your honor, this evidence is sought to be introduced upon the question of contributory negligence.

Mr. Green: Your honor, please, the jury can see that his arm is off and I can not see that it would assist this jury.

Mr. Henshaw: I understand the jury can see that his arm is off, but I want the record to show it.

By the Court: I don't think it makes any difference; he can answer.

Defendant excepts.

Q. You may state whether or not you have both arms and hands off. A. No, sir.

Q. Which arm is off, or hand is off, if either, and where? A. About an inch I guess, above the joint, or an inch and a half.

Defendant objects to question and answer; objection overruled; defendant excepts.

Q. An inch and a half above the wrist joint? A. Yes, sir; well it is something near as I can state, about an inch or probably an inch and a half above the wrist joint of the right arm.

Defendant objects to question and answer; objection overruled; defendant excepts."

The father was entitled to recover only for pecuniary loss suffered by the death of his child. His physical condition could not affect the amount of such loss. In C. P. & St. L. R. R. v. Woolridge, 174 Ill. 333, where the father was killed, it was held reversible error to allow a son to testify that he was crippled, upon the ground that this fact could not affect the amount that plaintiffs were entitled to recover.

It is true, as counsel for appellee claim, that the stub of the arm will again appear if the case is retried. But the examination of the father particularly and specifically called attention to his condition.

It is not easy to see how the loss of a child seven years old causes $4,000 pecuniary damages to its parents, brothers and sisters. When so large an amount is awarded, in such a case as the case at bar, any improper testimony that a court can see may have contributed to swell the amount is reversible error.

For the cause stated, the judgment of the Circuit Court is reversed and the case remanded.